and we will proceed to the third case, which is 19-12418, Thai Meditation Association of Alabama v. City of Mobile. We have Mr. Storzer here on behalf of the appellant. With him and splitting time with him is Eric Treen from the U.S. Department of Justice. And for the City of Mobile, we have Mr. Strasovich. Mr. Storzer will lead us off. You've reserved two minutes for rebuttal. And then Mr. Treen will follow before we hear from Mr. Strasovich. Good morning. Thank you. Good morning, Your Honors. My name is Roman Storzer and I represent the appellants, Thai Meditation Association of Alabama and Sivaporn, Varen, Serena and trying to use a seven-acre property as a Buddhist meditation center for about 30 people. Where this property is located, the use is not only permitted, but it is encouraged by the City of Mobile's building laws. The Association needed what the City calls planning approval, which is a discretionary review process that allows the City to make sure that any impacts are addressed. Every single church that has applied for planning approval has been approved by the City. Here, the City refused to treat the Association as a, quote, church or religious facility. The planning commission's attorney decided that the Buddhist meditation center was, quote, not a religious facility. The application was for Mediation Center of Alabama or whatever. This is not the Baptist Church or the Episcopal Church. Now, this treatment by the City has had a profound effect on the ability of the Association to worship in a zoning district that supposedly encourages such use. This appeal is about the standards that need to be applied under RLUIPA's provisions and the Alabama Religious Freedom Act and whether they actually provide religious organizations with any real protection from burdensome and potentially reduces them to dead letters. It held that denying a religious organization approval to worship cannot substantially burden its religious exercise unless it can prove that there's no other location where it can do so. This standard, the standard that the court used, that the regulation must completely prevent the individual from engaging in religiously mandated activity and requiring proof that the religion requires them to locate at this particular site, is practically impossible to meet in a discretionary permit context. Except in the most extreme cases, there will always be another property where they theoretically could be used. And by requiring that both the activity and the location must be religiously mandated, it is directly contrary to RLUIPA's definition that religious exercise includes any exercise of religion, whether or not compelled by or central to a system of religious belief. The district court's decision also renders the substantial burdens provision of RLUIPA redundant with its total exclusion provision. That's because if you can't use your property as a church because a permit is denied and you are able to prove that you can't use any other property as a church, then you've been totally excluded from the jurisdiction under section 2000 CC B3A of RLUIPA. It's obviously a cardinal rule of statutory interpretation that provisions should not be interpreted in such a way that renders them superfluous, which is what happened here. The court also failed to correctly apply this court's analysis for an equal terms violation. Here, the evidence, which was pretty much undisputed, demonstrated that the city had granted approval under the same relevant circumstances to a non-religious assembly and institution use located down the road, the Alba Fishing and Hunting Club. But the district court... Judge Newsom, just a quick question about the equal terms thing. I mean, those seem like fairly sensible bases for distinguishing to me. The age of the Alba Club, that its purpose was to repair and expand rather than building something new. I mean, those seem like pretty genuine, sensible distinctions to me. Well, Your Honor, that's the problem here. The issue is, and this was alluded to in the Midrash Tafarti case, and it's been held by various other circuits, that the distinguishing criteria have to be relevant for the specific determination at issue. In other words, what is important for planning approval or denial? And the city has admitted that the standards are exactly the same for a new or existing use. The age of a use or whether it existed prior does not affect the analysis for planning approval according to the city itself. Now, is it a distinction? Yes, it's a distinction, but it's not a relevant distinction. Does that mean, just by way of analogy, and I don't want to chew up all your time, I've got a question for you about the Alabama statute as well, but I mean, does that mean, just by analogy, that if I want to put an addition on the back of my house, that there's no relevant distinction between that and me saying that I instead want to tear down my house and build four smaller houses on the same lot? I think the criteria that one looks at, the effect on the community character, the effect on traffic, the effect on access, may very well be different in those cases. Here, with respect to the Alabama Fishing Club, they were not. The significant major expansion by the club would easily have had a much greater impact on these kinds of criteria than a 30-person quiet meditation center for Buddhists. When you look at the actual relevant criteria at issue, this is not the same as comparing putting up a deck versus putting up several other single-family homes. We are comparing apples and apples here. Can I ask you a quick question? I know that because you've split your time with the DOJ, it's short, but can I ask you a question about the Alabama statute? Of course. I take your point, and I think there's real force to your point, that there is a difference between the language of RFRA and RLUFA, which bracket the ARFA, we'll call it, between substantial burden and burden, but I just want us to test the implications. Are the implications of your position that it's burden alone, that any indirect, incidental burden on religious exercise violates the Alabama statute? That is our position. That is the clear text of the statute, and moreover, the Alabama legislation, there's no question that it made that conscious decision. Is there any limit to that principle? Absolutely, and that limit is in the strict scrutiny test. The legislature has said, look, we're not going to be held up by what is substantial or not, and everybody knows that that term has been interpreted in wildly varying fashions by different courts. We're going to look at burdens on religious exercise. Now, does the state have a good reason to burden religious exercise, and has it used the least restrictive means of doing so? That is the choice that the Alabama legislature made. It's the choice other states have made, including, I believe, that we have a citation to the 8th Circuit decision for Missouri, and these policy justifications cannot override what is a clear textual statement here. If there's nothing else on that point, I would continue. The district court also rejected the association's non-discrimination claim, holding that essentially a government is free to discriminate against any disfavored religion, so long as there is no identical comparator. That would leave a situation where a local zoning board could say, we're going to deny your permit because you're Muslim, because you're Catholic, because you're Jewish, and as long as they can't point to a similarly-situated comparator, there's no violation of the non-discrimination clause. Can I interrupt, Mr. Sorzer? I'm so sorry. I'm going to keep you for one more minute. Just on the non-discrimination piece, setting aside the comparator issue, just quickly, what's your best evidence of discriminatory intent on the part of decision-makers as opposed to the public? I'll grant you that the public was saying some pretty obnoxious things, but what's your best example or best evidence of discriminatory intent on the part of the decision-makers? Well, Your Honor, this is like asking me who's my favorite child. The decision made by the Planning Commission happened immediately after the statement that this decision was based on a commercial-type use. The entire sequence of events led the Planning Commission to not treat this as a religious facility. That was all that was discussed at all the questions that related to the association at the Planning Commission's meeting. It was what, again, the Planning Commission's attorney told the Planning Commission and the City Council, and the implication there is extremely significant because if it's a commercial use, it's not allowed in this district. Even if it was some other type of planning approval use that is not a church or religious facility, its use is not, quote, encouraged under the zoning code, and the treatment of this use not as a religious facility had, at the very least, a significant or substantial impact on the Planning Commission and City Council's decisions. Now, there's a lot more... I guess, just in fairness, I mean, reaching back into the record, wasn't there a time when your client was describing itself as non-religious? And the reason for that is it meant that it was open to people of all religions. Even the district court found that this was a religious organization and questioned why the city had such a tough time understanding that. It is true that it was raised, and potentially even legitimately raised, early on. Once the association provided pages and pages and testimony after testimony demonstrating that this was, in fact, a Buddhist religious center, the city still stuck to its guns and still, even at the late date of the City Council meeting in January, after the Planning Commission's decision, was still telling the City Council that it wasn't a religious facility. So, could it have been raised legitimately at the very beginning of the process? Sure. Any time after that, it was not legitimate and it was evidence of discriminatory motivation. Okay, thanks so much. Let's hear from Mr. Treen for the Department of Justice. Okay, please, the Court. I'm Eric Treen for Amicus United States of America. The United States wishes to use this time to focus only on one issue, and that's the standard to be used in substantial burden. In Midrash Sephardi, this Court laid out fairly broad goalposts of what would be a substantial burden. On the one hand, it must be more than an inconvenience on religious exercise. That's a point in which all circuits looking at this issue have agreed on. On the other hand, something that requires someone to forego religious precepts is certainly a substantial burden. That's a sufficient condition for finding a substantial burden, but not a necessary one. Really, the meat of the matter is in the middle, which is where the Court talked about a substantial burden being significant pressure, coercing someone to conform his religious behavior. In other words, pressuring someone to change their religious behavior in a way that significantly impedes religious exercise. And this standard is in accord with the statutory language of RLUIPA, as well as what other circuits have found. First, substantial burden. The statute uses the term substantial. Not insuperable. It doesn't need to be insuperable. It's something meaningful, substantial. As counsel said earlier, it says it need not be compelled by or central to a system of religious belief. And moreover, the RLUIPA statute says that the use, building, or conversion of real property shall be construed to be religious exercise. So using property for religious purposes is religious exercise. But this creates a bit of a problem for courts analyzing, because as counsel noted, a church, a synagogue, a mosque, a meditation center can always go somewhere. They can move out of state. They can move to a different jurisdiction. Not like someone in a prison who has no choice, or a hobby lobby under RFRA which had no choice but to abide by the law. On the other hand, the Supreme Court's recognized in Sherbert v. Verner that pressuring somebody with denying them unemployment benefits because they wouldn't work on a Saturday their Sabbath is a substantial burden under the First Amendment. Someone hypothetically could look for another job. There's always another job in the economy. But the court said, we're going to look at the situation and was this person substantially burdened? And I think that's what needs to be done in the RLUIPA context and what Midrash Sephardi's language contemplates. In fact, other circuits have done this. They've looked at a number of factors. First, what's the actual need for the space? The first thing you have to do is show that you need the space. You need a bigger church. You need a new church. You need a better location for your meditation center. Did you have a reasonable expectation? That goes to whether it was self-imposed. Was it self-imposed or did you have some reasonable expectation you could use the property? Not a guarantee. There's no guarantees in zoning law. But was it reasonable for you to seek this out? Would you face delay, uncertainty and expense by being forced to move or seek other property? And included within this delay concept is arbitrary and capriciousness. It was the government acting arbitrary. Would your future attempts to locate in similar properties face similar matters? And this is part of the purpose of RLUIPA. It's a backstop on discrimination. The Seventh Circuit elaborated on this in the St. Constantine and Helen v. New Berlin case, which is mentioned in the brief. It's a backstop. It's a prophylactic to prevent that kind of hidden discrimination where unfamiliar or unpopular religions may face discrimination in a highly discretionary zoning process. So in light of all this, we think that perfectly consistent with mid-race Sephardi is the concept that you don't need to completely be required to forego your religious belief by a denial. But if there's substantial pressure that requires you to forego your religious conduct, and that is conduct that is substantially compromised, that is enough to be a substantial burden under the language of RLUIPA. Unless there are any questions, I'll see the rest of the time. All right, Mr. Trem, thank you so much. Mr. Strasovich, for the city, and Mr. Strasovich, at the risk of asking you to reorder your argument, would you mind, for my benefit, beginning with the argument that you just heard from the Department of Justice, that the court sort of misunderstood, the district construing substantial burden, and that substantial burden doesn't necessarily mean, doesn't necessarily entail complete prevention or required foregoing. That it might, those might be sufficient conditions, but not necessary conditions to a substantial burden. Yes, Your Honor, and again, Mike Strasovich, for the city of Mobile, I appreciate the court facilitating argument in this fashion. And skipping, as the court's requested, to what we just heard from DOJ counsel, the district court here correctly followed Midrash, and by following Midrash, followed the free exercise cases in Supreme Court jurisprudence on which Midrash relied. And I don't believe that the characterization of the district court's opinion can fairly be boiled down to equating a substantial burden only with a complete prohibition on religious exercise. In fact, the trial court's order quoted liberally from the Midrash decision and indicated correctly that a substantial burden requires something more than an incidental effect on religious exercise, that it must place more than an inconvenience on religious exercise, that it is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior, and that it can result from pressure that tends to force adherents to forego religious precepts or from pressure that mandates religious conduct. Those principles flow directly from the Supreme Court's free exercise cases, such as we've cited in our brief, the Ling case and the Hobby case and the Sherbert case, which largely dealt with is there pressure brought by a government law or regulation that is requiring a religious adherent to give up certain tenets of their faith. And that is the approach that the district court used here relative to the claimed burdens that appellants mentioned here, such as noise, such as safety, things of that nature. What the analysis is not, what the analysis is not is simply a weighing of whether there's an old facility that has certain features and does the proposed new facility have better features. The analysis is what is the substantial burden that is caused by the government law or regulation. This is Judge Newsom. I just want to make sure that we're all on the same page about what the district court did and didn't say. I mean, as I read the district court's opinion, it said, citing Midrash, an individual's exercise of religion is substantially burdened if a regulation completely prevents the individual from engaging in religiously mandated activity or if the regulation requires participation in an activity prohibited by religion. And then went on to say, to refer to Midrash as the binding 11th Circuit standard, which the district court said was, quote, whether defendant has imposed pressure so significant as to require plaintiffs to forego their religious beliefs. So it seems to me that the district court read what Midrash was saying is that those sorts of extreme deprivations are sufficient conditions, but not necessary conditions to a substantial burden. And the district court here said, unless you meet that standard, that is, unless you meet the necessary condition, there is no violation. Well, as I read the district court's opinion, which correctly was fact intensive and correctly determined the substantial burden issue as a matter of law, certainly there are certain examples that the district court cited that would meet the substantial burden standard. Certainly, a complete prohibition would meet the substantial burden standard. However, what it does take short of complete prohibition in order to meet substantial burden, which is what we have here is not complete prohibition. What we do require by Midrash is that substantial burden must cause that religious adherent to forego certain precepts or certain beliefs. And that's consistent with free exercise jurisprudence. And as I said, the analysis of a substantial burden is not, as I say, qualitative between, let's say, the old facility and the new facility if it was, which seems to be the DOJ position as well as the appellant's position, if it was, a local government like the city of Mobile could never deny approval for a new facility no matter how large it was, no matter where it was, if the applicant merely argued that the new facility was somehow better than the old facility. And what we have here... Again, I think the Department of Justice to be saying that there's a more nuanced determination. It's not just that, you know, you get to say we really want this and that's good enough, that there, you know, there are factors that the other circuits have developed on a sort of a case-by-case basis that would inform that consideration, reasonable expectation, you know, sort of degree of interference, things like that. And what those... I appreciate the question. And what the other circuits have done, and there's nothing within the text of Arlupa that would dictate this, that would... Well, how about the word substantially? I mean, it seems to me that your reading of Arlupa, the text of Arlupa, is that the word substantially is transformed into the word, you know, completely, totally, dispositively, something like that. No. And that's... The text is substantial burden, first of all, as I'm sure the court is aware. Substantial burden is a term of art in free exercise jurisprudence. And when Congress enacts a statute such as Arlupa that includes the term substantial burden and does not define it differently than the courts have defined it, the definition that is found in the Supreme Court's precedent is presumed to be the meaning of that particular provision. What these other circuits have done is they have strayed from that free exercise jurisprudence that I mentioned, and they have taken the emphasis off of what is the burden on the religious adherent or the applicant, and they have moved the analysis to other factors such as, well, what was the governmental process or the administrative process? Did the plaintiff reasonably expect to build a church and things of that nature? The problem with that approach is multifold. First of all, these same circuits have moved towards immunity, effectively, from land use regulation as best shown by the Fourth Circuit last year in the Baltimore County case where they automatically equated a discretionary denial of a variance with a substantial burden. And secondly, they tend to conflate the substantial burden provisions of Arlupa with other provisions such as the nondiscrimination provision because they focus on the regulatory process instead of the degree of burden that is imposed by the government regulation on the adherent and whether that causes the adherent to forego certain religious precepts. All right. If I may, just briefly, and then I'm going to shut up and let Judge Branch ask a question. About the Alabama statute, you just said that substantial burden is a term of art. What then of the Alabama statute? You had substantial burden preexisting in the free exercise case law. Then you had RFRA in 93 that says substantial burden. Then you have the ARFA in 98 which very conspicuously just says burden. Then you have Arlupa in 2000 which reverts back to substantial burden. Why shouldn't we read the Alabama statute precisely if it's written to mean something other than substantial burden? Well, one factor here is the Alabama legislature, and I believe this is actually a constitutional amendment, but there is no definition of the term burden in the Alabama religious freedom amendment, nor has that term been defined by an Alabama state court in its case law. The federal district courts in Alabama that have been faced with that question have utilized essentially the same Arlupa framework in determining whether there is in fact a burden on religious exercise, but the legislature of the state of Alabama did not, nor have the courts of the state of Alabama given guidance as to precisely what that term means, simply using the term burden. I think the courts... I'm sorry. Go ahead, Joe. I take then the answer to my question is that despite the fact that the statute says burden and not substantial burden, some district courts have ignored that difference and interpreted burden to mean substantial burden and we should do the same thing. Well, they have interpreted it in the fashion that the court has, and the district court's concern, and I think the concern of this court at other times, including in the mid-region, is elevating religious uses above non-religious uses and potentially infringing upon the establishment clause. And if I'm glad to continue on the substantial burden, I know my time is short. I would like to talk about the equal terms. Counsel, this is Lisa. Counsel, this is Lisa Grant. Yes. I have a follow-up to the question about the Alabama statute. Is it something that we should certify a question to the Alabama Supreme Court about? It is a question that could be certified to the Alabama Supreme Court if necessary. Our position is that the Alabama Federal District Courts have dealt with this particular issue, especially given the lack of a definition in the statute of that term burden, have done what is appropriate here, and have simply utilized our loophole framework to deal with that particular statute. Okay. Let me go back to what my original question was going to be. Let's move back to the federal statute. What if we agree with the appellant and the Department of Justice that the district court applied to top of the standard when it was evaluating the Midrash case and what we meant by substantial burden? Do you still win if you agree with the Justice and the appellant? Even under the alternative formulations that these other circuits have used, and not saying I agree with them, but even if they were used, the city still prevails on this appeal. Let me give you some of the reasons why. First of all, the evidence is replete, and I part company with the Billing Council in the transcripts of the hearings before the Planning Commission and the City Council. There was abundant testimony taken from opponents of the project that fell squarely within the neutral planning approval criteria found in the zoning ordinance. There was discussion of issues such as traffic, of compatibility with the existing neighborhood, about the concerns of converting a long-time single-family residential property and adding approximately 5,000 square feet of new buildings to that property to be used for weeknight classes, weekend retreats, and other activities approximately 200 days and nights out of the year. Under the planning approval criteria that is set forth in the zoning ordinance, the Planning Commission was purely within its discretion, as was the City Council, in hearing those concerns and determining that this use at this location was not appropriate. The planning approval criteria is location and site plan specific, and what the city passed on here was the site plan that the plaintiffs had put before it for those new buildings, that degree of use within a long-time residential neighborhood. This was a very unique application to the city, and again, contrary to appellant statement, there is evidence in the record the city has issued other denials of planning approval in the past, several denials. The city has said in the last 10 years or so it has fielded very few applications for new churches due to societal and cultural reasons and things of that nature, but the city has denied several applications for planning approval in the past by churches, and that is cited in our brief. If I could address briefly the non-discrimination claim, obviously that is adjudicated under a clear error standard as far as the factual findings, and this court has never required a detailed factor-by-factor analysis of the Arlington Heights factors. The trial court cited to those factors, and many of the extensive findings of fact made by the district court bear upon those factors. The court ultimately determined as a whole that the evidentiary record did not reflect an intent to discriminate against the plaintiffs based on their religious beliefs, and part of that was the testimony of the planning commission and city council members as to the reason why they moved to deny approval and why they voted to deny approval, indicating agreement with the terms of the letter of decision that was issued by the city. Briefly as to the similarly situated comparator requirement, this court has traditionally in the ED protection context, in the discrimination context, and as well in other ARLUPA contexts such as equal terms required, proof of a similarly situated comparator. I do want to call the court's attention to one particular land-use case, which is the Griffin Industries case that talks about some of the criteria. Counsel, your time has expired. I hear my time has expired, and I will respect that. I'm glad to respond to anything else that the court has. Thank you. Very well. Thank you so much. Mr. Storza, you have two minutes in rebuttal. Mr. Storza, you may be on mute. I believe I'm unmuted now. Responding to one of the points that counsel just made, that there have been other denials, there's no evidence in the record that establishes that there have been any other denials for other religious organizations that were not subsequently approved a little while later. That is simply not there. When counsel was asked about would the appellant be successful under our view of the standard, it is telling, I believe, that the counsel only discussed the fact that he believes we would fail strict scrutiny review and not that there would not be a substantial burden on religious exercise. And strict scrutiny review is a very high standard of review and one that cannot be met here by the city. We have city staff admitting at trial and in depositions that there really is no issue with this use. There's no traffic issue. There's no access issue. The impact on community character would be basically nil. This is a nearly seven-acre wooded lot. The testimony was that you could lose 30 people on that property in the forest. There's no way that the city could establish that it meets strict scrutiny. I wanted also to point out two important aspects of both RLUIPA and ARFA, that RLUIPA's broad construction provision says that its terms should be construed in favor of a broad protection of religious exercise to the maximum extent permitted by the terms of this chapter in the Constitution. Similarly, ARFA says that it shall be liberally construed to effectuate its remedial and deterrent purposes. The holdings in both Midrash, Sephardi, and the earlier Gross v. City of Miami Beach cases don't control here because those cases both involved a complete prohibition of religious uses in one particular zoning district while allowing them in various others. And those decisions certainly could make sense. They do not provide city officials with the discretionary process of denying churches or religious institutions that are disfavored. It does not allow the city... Counsel, your time has expired. Thank you. Mr. Korser, thank you very much. Thanks to all involved.  We will submit that case in procedure.